WELLS v. WELLS.

1. DIVORCE—EXTREME CRUELTY—RECORD.
   Divorce on ground of extreme cruelty *held*, properly granted plaintiff husband on the record presented.

2. SAME—PROPERTY SETTLEMENT—RECORD.
   Property settlement, granting defendant wife $12,000 in property and cash, in divorce from marriage in which parties lived together less than 3 months *held*, adequate in the light of the duration of the marriage and other facts adduced.

Appeal from Muskegon; Beers (Henry L.), J. Submitted Division 3 January 5, 1967, at Grand Rapids. (Docket No. 1,178.) Decided March 28, 1967.

Complaint by Alexander McGregor Wells against Anne King Wells for divorce. Judgment for plaintiff. Defendant appeals. Affirmed.

*Poppen, Street & Sorensen* (*Harold M. Street,* of counsel), for plaintiff.

*Parmenter, Forsythe & Steendam* and *John B. Nahan,* for defendant.

FITZGERALD, P. J. In reviewing *de novo* a divorce proceeding which consumed 5 days in trial and 744

REFERENCES FOR POINTS IN HEADNOTES
[1] 24 Am Jur 2d, Divorce and Separation § 32 *et seq.*
[2] 24 Am Jur 2d, Divorce and Separation § 925 *et seq.*

pages of transcript, reason dictates that the most succinct statement of facts may well be found in the opinion rendered by the trial court:

"This is a divorce case in which the plaintiff was, at the time of the marriage, 68 years of age, and the defendant wife about 40 years of age. The parties were married on the 14th day of May, 1962, and separated on the 10th day of August, 1962, the marriage having continued for a period of slightly less than three months. The plaintiff is a rather wealthy man, making his living from a trust account in the Hackley Union Bank, which according to the testimony, contains some six or seven hundred thousand dollars.

"It is the claim of the plaintiff that following the marriage, the defendant refused to cohabit with the plaintiff and that the marriage never actually was consummated; that the defendant did not perform the ordinary duties that a wife does, and shortly after the marriage brought her son to live with them in a trailer they had purchased. Plaintiff claims defendant and the son did not treat him properly and his life became unbearable with them. Plaintiff further claims the defendant was apparently ashamed to appear in public with him and defendant was gone a considerable part of the time.

"The defendant has filed a counterclaim for divorce and in her answer and counterclaim she denies the allegations made by the plaintiff. She charges him with violence against her, claiming he threw a tea cart at her, causing bruises, that he attempted to smother her, and [that] he made an assault upon her causing her to have treatment in the hospital for a period of two or three hours. She further contends plaintiff is an alcoholic and drank to excess."

As stated, the 5-day trial resulted in the above-quoted statement and the further observation that one or the other of the parties was deliberately falsifying and that, considering the demeanor of the

parties, their manner of testifying, and what the evidence showed as to their respective histories, it was the court's opinion that the testimony of Mr. Wells was entitled to credence and the testimony of Mrs. Wells was not.

Defendant appeals from the judgment of divorce awarded plaintiff and from the property settlement granted her, consisting of a house trailer valued at $11,000 and the sum of $1,000 in cash, claiming that she should have been granted the divorce and a "proper award" of $100,000, plus $5,000 in attorney fees in addition to the sum previously awarded in the amount of $2,200.

The central issue dwelt upon by defendant is whether plaintiff committed an assault which was inflicted upon defendant at about 2:30 a.m. on August 10, 1962, stating, "But for the assault, there would have been no divorce action; it is the central issue in the case. If Mr. Wells committed the assault, his wife has the right to a divorce; if Mr. Wells did not assault his wife, her direct accusations constitute cruelty to him justifying the granting of a divorce to him." We commend counsel for this forthright exposition of the issue which confronts us, more forthright, perhaps, than the colorful prose used in defendant's brief to describe the net effect of the trial court's disposition of the case:

"The trial judge in effect found that Mrs. Wells, who is a poor Lithuanian woman who has had to work throughout her life, who has been in her past an unfortunate judge of men, and who is younger by twenty-odd years than her rich, old husband, was unworthy of belief.

"On the other hand, he found that Wells, who had led a life of ease and idleness, who had been divorced by two previous wives, whose testimony has been replete with shifts and contradictions, who is a mean-mouthed whiskey-guzzler, according to com-

pletely disinterested neighbors, could not have committed the assault."

This sprightly characterization of the main participants in this courtroom drama is sufficient to set the stage for the *de novo* review of the record before us.

With respect to the assault, testimony revealed that Mr. Wells and his wife were sleeping in their bedroom in the trailer in separate beds, the defendant charging that Mr. Wells inflicted the severe beating, Mr. Wells denying this. Of the entire transaction, the trial court stated as follows:

"It is my opinion the testimony of the plaintiff in this case is entitled to credence and the testimony of the defendant is not. The main thrust of the defendant's counterclaim for divorce is her claim of unprovoked and unwarranted assault made upon her by the plaintiff. The plaintiff denies having made this assault and it is my opinion the assault, if it was made upon the defendant as she claims, was made by some other person than the plaintiff. Her testimony as to the circumstances surrounding the assault is vague and uncertain, and studying the plaintiff's history, the making of this assault is entirely contrary to this man's conduct during his entire life. Also, the activities of the defendant and her son in destroying the evidence of the claimed assault immediately following it, and her inconsistent claim first to the doctor that she did not know who assaulted her and later her insistence on having the plaintiff prosecuted, lead me to believe that this assault as I have said, was made by some other person, it being undisputed that the defendant has been associating with certain people not her husband."

Need we say more? The cases submitted by counsel for both sides have been carefully examined and present nothing new or definitive, isolated as they are by their unique fact situations.

Defendant's request for a $100,000 property settlement for a 3-month marriage puts one in mind of the "heart balm" cases, *circa* 1920, which are mercifully a part of the past.

Suffice it to say that a thorough and thoughtful review of the entire proceeding fails to convince us that the trial court erred in deciding the case as it did. The nocturnal assault remains unexplained and the evidence does not convince us that the trial court erred in assessing plaintiff's part therein.

This Court in its short span of existence has already developed sufficient case law based upon the vast backlog of Supreme Court decisions to document this appeal. On the proposition that a divorce on the ground of extreme cruelty was properly granted to the plaintiff husband under the record presented, see *Mattara* v. *Mattara* (1966), 4 Mich App 246. On the proposition that the property settlement was adequate in the light of the duration of the marriage and the other facts adduced, see *Stathas* v. *Stathas* (1965), 1 Mich App 510.

Affirmed. Costs to appellee.

T. G. KAVANAGH and QUINN, JJ., concurred.